IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREON DYSHAUN WRIGHT,<br><br>     Petitioner,<br><br>  vs.<br><br>ROBERT GOWER, Warden, California Correctional Center,[1]<br><br>     Respondent. | No. 2:11-cv-2801-JKS<br><br>MEMORANDUM DECISION |

  Treon D. Wright, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Wright is currently in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at Trinity River Conservation Camp #3. Respondent has answered, and Wright has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

  On January 8, 2009, Wright was charged with two counts of possession for sale of a controlled substance (counts one and three); transportation of a controlled substance (count two); driving under the influence of alcohol and/or drugs (count four); and driving while having a 0.08% or higher blood alcohol level (count five). With respect to the three felony charges (counts one through three), the Information charging Wright also alleged that he had previously been convicted of a violent or serious felony and that he had possessed more than 28.5 grams of cocaine and 57 grams of a substance containing cocaine. With respect to the two misdemeanor charges (counts four and five), the Information alleged that Wright had previously been

---

  [1] Robert Gower substituted for R.A. Barnes as warden of the California Correctional Center. FED. R. CIV. P. 25(c).

convicted of driving under the influence and that Wright had a blood alcohol level in excess of 0.15 percent.

On direct appeal, the California Court of Appeals summarized the facts underlying Wright's indictment as follows:

> In the evening of December 12, 2007, California Highway Patrol Officer Brian Compton received a call about an erratic driver on Interstate 5. Responding to the call, Compton observed a vehicle "weaving all over the road." Compton pulled the car over and approached the driver, [Wright], who looked down and fumbled with something. Compton directed [Wright] to get out of the car. When he did, [Wright] "was very, very unsteady on his feet." His breath smelled of alcohol, "his eyes were red and watery, and his speech was definitely slow, slurred, [and] kind of thick sounding." It appeared that [Wright] had urinated in his pants. Compton administered a series of field sobriety tests, which [Wright] failed. [Wright] was arrested for driving under the influence of alcohol.
> Compton and other officers conducted an inventory search of [Wright]'s car and found that a backpack in the trunk contained a large baggy with 61.9 grams of cocaine, valued at approximately $2,000. At the jail, [Wright] was searched and approximately $1,800 was found stuffed in his socks. Two breath tests were administered that measured [Wright]'s blood-alcohol level at 0.24 percent.

On May 22, 2008, Wright made a motion pursuant to *People v. Marsden*, 465 P.2d 44 (Cal. 1970), seeking a new attorney because of defense counsel's refusal to file a suppression motion challenging the search of Wright's vehicle. Wright believed that the Highway Patrol officers who had searched his vehicle had not conducted a valid inventory search. Defense counsel explained to the court that he refused to file the suppression motion because he determined it was without merit and would be frivolous. The trial court denied Wright's *Marsden* motion.

The following morning, after a jury had been empaneled, Wright moved pursuant to *Faretta v. California*, 422 U.S. 806 (1975), to dismiss counsel and represent himself at trial. After a lengthy discussion with Wright, the court granted the *Faretta* motion and continued the

case to allow Wright to prepare his suppression motion. Wright also requested the appointment of advisory counsel, which the court denied.

On July 10, 2008, Wright moved to dismiss the charges, claiming that he had been denied his right to a speedy trial. The court denied the request. Wright then requested appointment of counsel to assist him in pursuing a writ for the denial of his motion to dismiss. The trial court denied the request and noted that, if it did reappoint counsel, it would appoint Wright's previous attorney to represent him. The following day, Wright informed the court that he had changed his mind and did not want counsel reappointed. The court informed Wright that any further requests for reappointment of counsel would likely be rejected.

On July 17, 2008, Wright proceeded to jury trial. Wright complained that he had not been able to file a suppression motion because of limited access to the law library and the brief period of time that he had been representing himself. Wright requested a continuance to file the motion; the court denied the request. Wright also renewed his request for reappointment of counsel. The court denied that request as well.

At the conclusion of trial, the jury found Wright guilty of all charges in the Information and found that all of the enhancement allegations were true. Following the verdict and at Wright's request, the court appointed a new attorney to represent him at the sentencing hearing. The trial court subsequently sentenced Wright to prison for an aggregate term of ten years.

Through counsel, Wright appealed his conviction, arguing that the trial court violated his right to counsel under the Sixth and Fourteenth Amendments when it denied his request for counsel after he waived his right to counsel in favor of self-representation. The appellate court affirmed his conviction in an unpublished, reasoned opinion. It first concluded that, based on the

totality of the circumstances and in light of the fact that Wright "was repeatedly told of the risks of self-representation and strongly advised against" self-representation, the trial court did not abuse its discretion by denying "the belated request for reappointment of counsel."  It further concluded that, although Wright criticized *Faretta* as "a poorly reasoned decision which should be overturned by the United States Supreme Court," the court was nonetheless bound by *Faretta* such that, "when a defendant validly waives his right to counsel, the trial court has no choice but to allow self-representation."  Wright petitioned for review of the denial to the California Supreme Court, which was summarily denied on November 17, 2010.

Wright timely filed a Petition for a Writ of Habeas Corpus to this Court on September 27, 2011.

## II. GROUNDS/CLAIMS

Wright asserts two grounds for habeas relief, raising the same arguments to this Court that he presented to the state courts on direct appeal of his conviction.  Wright first argues that the trial court violated his right to counsel when it denied his request to reappoint counsel after Wright had waived his right to counsel and elected to represent himself.  Wright similarly contends that the trial court violated his right to counsel when it granted Wright's request to represent himself.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

<u>Claim One: Trial Court Erred in Denying his Request to Reappoint Counsel</u>

Wright first claims that the trial court violated his right to representation when it denied his request to reappoint counsel after Wright moved to dismiss his assigned counsel. On direct appeal, the appellate court rejected this claim, stating:

> Here, the request was made on the day of trial, with a jury pool waiting–the second jury pool called for this case. [Wright's] earlier request to be self-represented was made on the day of trial and had necessitated a continuance of the proceedings after the jury pool had been assembled. He had also attempted to make numerous changes to his representation. He had filed a *Marsden* motion seeking removal of Attorney Miller and stated he did not want to represent himself. The following day, he indicated he had changed his mind and wanted to represent himself, but also wanted advisory counsel. Two months later, a week before jury trial was set to begin, he again asked for appointment of counsel because he did not feel competent to represent himself. He was told the court would consider reappointing Miller, and he agreed to that. The next day, [Wright] again changed his mind, did not want to be represented by Miller, and decided to continue to represent himself. He acknowledged at the time that, if he changed his mind again, it was unlikely that counsel would be appointed. Nonetheless, [Wright] repeatedly reaffirmed his desire to proceed representing himself. Finally, a week later on the day of trial, [Wright] requested the appointment of counsel, again claiming he was not competent to represent himself.
> Thus, the record shows that [Wright] was repeatedly told of the risks of self-representation and strongly advised against that course of action. Despite these strenuous warnings, he insisted vigorously and repeatedly on representing himself. He initially sought removal of Attorney Miller because [Wright] wanted Miller to file certain motions, but Miller felt they had no legal basis. The court agreed with that assessment when it declined to remove Miller after the *Marsden* hearing. At every opportunity before the day of trial, the court considered [Wright's] request to appoint counsel, only to have [Wright] change his mind again. Trial had been delayed once because of [Wright's] change in representation status, and a jury pool had already been inconvenienced. Although his reason was definite ([Wright] believed that he was not competent to represent himself), this was the same reason he had previously given a week before and then changed his mind. The last request for self-representation was made before a new judge. It was not unreasonable to believe that nothing had changed for [Wright]; he was simply hoping that he would have a more sympathetic audience for his insistence that Miller not be the attorney reappointed to represent him. Appointing an attorney other than Miller on the day of trial would have necessitated another delay in the proceedings. While the case was not unduly old, this would have been the second continuance with a jury waiting in the wings.

Based on the totality of the circumstances, we find no abuse of discretion in the denial of the belated request for reappointment of counsel.

In *John-Charles v. California*, 646 F.3d 1243, 1245-46 (9th Cir. 2011), the Ninth Circuit considered whether a petitioner's right to counsel was violated when a California state trial court denied the petitioner's request to re-appoint trial counsel when he changed his mind about representing himself because "he was bewildered by the jury selection process and motions arguments." The Ninth Circuit ultimately rejected the petitioner's claim that he was constitutionally entitled to the reappointment of counsel, finding that the Supreme Court has not "directly address[ed] whether and under what conditions a defendant who validly waives his right to counsel has a Sixth Amendment right to reassert it later in the same stage of his criminal trial." *Id.* at 1248-49.

In *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449-51 (2013), the Supreme Court recently confirmed the Ninth Circuit's conclusion in *John-Charles* that it is an open question whether a defendant has a constitutional right to have counsel reappointed following a valid *Faretta* waiver. In *Rodgers*, the Court noted the "tension" between the Sixth Amendment's guarantee of representation and the "concurrent" constitutional right to waive representation. *Id.* at 1450-51. The Court held that the approach of California courts–which vest the trial judge with discretion when considering post-waiver request for reappointment of counsel to either grant or deny them based on a totality of the circumstances–"cannot be said" to be contrary to or an unreasonable application of Supreme Court precedent. *Id.*

In this case, the California Court of Appeal's conclusion that the trial court had discretion to grant or deny a subsequent request to reappoint counsel and that such decision is reviewed based on the totality of the circumstances is wholly consistent with *Rodgers*. It is well-

7

established that a state court's decision adjudicating an issue cannot be contrary to, or an unreasonable application of, Supreme Court precedent if the Supreme Court has not yet decided the issue.  *See Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam); *Carey*, 549 U.S. at 77; *see also Crater v. Galaza*, 491 F.3d 1119, 1123 (9th Cir. 2007).  Consequently, Wright is not entitled to relief on his first claim.

<u>Claim Two: Trial Court Erred in Granting his *Faretta* Motion</u>

Wright additionally claims that he was denied his right to representation when the trial court granted his *Faretta* motion allowing Wright to represent himself.  On direct appeal, Wright did not challenge the validity of his waiver but rather challenged the vitality of the Supreme Court's decision in *Faretta*.  The appellate court denied the claim, reasoning:

> In this argument, [Wright] acknowledges that in *Faretta*, the United States Supreme Court determined that, when a defendant validly waives his right to counsel, the trial court has no choice but to allow self-representation.
> [Wright] "submits [that] *Faretta* . . . was a poorly reasoned decision which should be overturned by the United States Supreme Court."  He recognizes, of course, that we are bound by *Faretta* but raises the contention to preserve it for federal review.

The right to counsel guaranteed by the Sixth Amendment "has been interpreted to encompass 'an independent constitutional right' of the accused to represent himself at trial, and thus waive the right to counsel."  *Stenson v. Lambert*, 504 F.3d 873, 882 (9th Cir. 2007) (quoting *Faretta*, 422 U.S. at 806).  Such waiver, however, must be "knowing, voluntary, and intelligent." *Iowa v. Tovar*, 541 U.S. 77, 87-88 (2004).  While no specific colloquy is required, *Lopez v. Thompson*, 202 F.3d 1110, 1117 (9th Cir. 2000) (en banc), the Ninth Circuit has "gleaned a three-factor test from *Faretta*, under which in order to deem a defendant's *Faretta* waiver knowing and intelligent, the district court must insure that he understands 1) the nature of the charges against him, 2) the possible penalties, and 3) the dangers and disadvantages of self-

8

representation," *United States v. Forrester*, 512 F.3d 500, 506 (9th Cir. 2008) (citation and internal quotation marks and brackets omitted). "The preferred procedure to ensure that a waiver is knowingly and intelligently made is for the district court to discuss each of the three elements with the defendant in open court," although a trial court's failure to do so "will not necessitate automatic reversal when the record as a whole reveals a knowing and intelligent waiver." *United States v. Balough*, 820 F.2d 1485, 1488 (9th Cir. 1987).

Wright argues for the first time in this Petition that his waiver was not voluntary because it was given under duress "from the trial court's refusal to appoint different counsel after he had shown attorney Miller failed to adequately prepare his case for trial and would not render adequate assistance." Although Wright did not raise this argument to the state courts on direct appeal, this Court may nonetheless deny his claim on the merits and with prejudice, particularly given that the argument is without merit. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Rhines v. Weber*, 544 U.S. 269, 277 (2005).

"[T]here is no authority for the proposition that [a defendant] is entitled to an absolutely unconditional choice between exercising his right to counsel and his right to self-representation." *United States v. Robinson*, 913 F.2d 712, 715 (9th Cir. 1990). In *Robinson*, the Ninth Circuit addressed a defendant's argument on direct appeal of his conviction that he was coerced into self-representation "as a result of . . . being faced with the implicit choice of retaining [an] attorney . . ., with whom he had apparently had some tactical and strategy disagreements, and proceeding pro se." *Id.* at 715-16. The Ninth Circuit concluded that "limitations on the range of

9

a defendant's free choice with regard to appointed or retained counsel are not constitutionally offensive and do not render a subsequent election of pro se status involuntary." *Id.* at 716. Because Wright does not argue that the trial court erred in denying Wright's *Marsden* motion to substitute counsel for Miller and the record does not demonstrate such error, Wright cannot show that the trial court's limitation of counsel to Miller rendered his waiver of the right to counsel involuntary.

Wright further contends for the first time in his Petition that his waiver was invalid because: "(1) [he] did not understand the charges against [him] before [he] waived [his] right to counsel; (2) [he] was not informed of the crimes with which [he] was charged; and (3) the nature of those charges." This Court may nonetheless address Wright's contention because it is belied by a review of the record as a whole. The court's lengthy discussion with Wright about his *Faretta* motion consists of 22 pages of the trial transcript. While the trial court did not, at the time of the *Faretta* hearing, expressly spell out the nature of the charges, a review of the record as a whole establishes that Wright's waiver was given with full knowledge of the nature of the crimes charged, particularly given that the court repeatedly stressed the maximum penalty that could be imposed and the adverse consequences to Wright of proceeding *pro se*. *See United States v. Johnson*, 121 F. App'x 724, 725 (9th Cir. 2005). Indeed, "perfect comprehension of each element of a criminal charge does not appear to be necessary to a finding of a knowing and intelligent waiver." *Robinson*, 913 F.2d at 715.

Moreover, the district court made an express finding that Wright's waiver was knowing and voluntary:

> I am making a specific finding that [Wright] is making this decision freely and
> voluntarily, he believes he can do a better job than both either [of his previously-assigned

10

attorneys], and I have explained to him what is going to happen to him. He is looking at eleven years in a locked facility, that doesn't appear to [faze] him at all, and he has cited enough cases here to suggest to me that at least he knows the names of cases. And, whether or not he can apply those to the facts, is yet to be [seen]. Clearly based on what Mr. Miller has told me, [Wright's] reading of the cases is not consistent with the facts and he very well may be wasting our time. If he is exercising his due process rights and he wants to have a fool for a client, I am going to allow him to do that. That will be the order.

The specific finding by the state trial court is entitled to this Court's deference, particularly given that the court had the opportunity to observe Wright's demeanor. *Robinson*, 913 F.2d at 715 (express finding by district court influential in court's holding on direct appeal that defendant's waiver was knowing and intelligent) (citing *United States v. Moya-Gomez*, 860 F.2d 706, 739 (7th Cir. 1988)). Accordingly, Wright is not entitled to relief on this ground either.

## V. CONCLUSION AND ORDER

Wright is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: October 24, 2013.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

12